# AFFIDAVIT OF DEA SA DAVID H. MCGUCKIN

I, United States Drug Enforcement Administration Special Agent David H. McGuckin, being first duly sworn, hereby depose and state as follows:

## I.     PURPOSE OF AFFIDAVIT

1.     The following affidavit is furnished to support the issuance of a criminal complaint charging:

**JOSEPH F. LARA**
**DOB        /1976**

with unlawful possession with intent to distribute controlled substances, specifically, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## II.    AGENT BACKGROUND

2.     I am a Special Agent (SA) with the United States Drug Enforcement Administration ("DEA") having served in this capacity for approximately 18 years, both from August 2004 to April 2019, and from March 2021 to the present. I am currently assigned to the DEA's Manchester District Office, High Intensity Drug Task Force One in Bedford, New Hampshire, where my primary duties include investigating federal drug crimes. For approximately 23 months, from April 2019 to March 2021, I was employed as an Inspector with the United States Postal Inspection Service ("USPIS"). While employed with the USPIS, I was assigned to the Boston Division, Prohibitive Mail Team, where my primary duties included investigating federal crimes involving the U.S. Mail, such as federal drug crimes. I hold a Bachelor of Science degree from the University of New Hampshire in Durham, New Hampshire and a Master of Science in Education degree from Iona University in New Rochelle, New York.

3. In my law enforcement training and experience, I have had an opportunity to search for, seize, and personally observe what I have recognized to be and what was later confirmed by drug analysis to be scheduled drugs, including but not limited to heroin, fentanyl, methamphetamine, cocaine, marijuana (both dried and growing), crack cocaine, and various narcotics lawfully available only by prescription. I have conducted or participated in among other things, surveillance, undercover transactions, debriefings of informants and confidential human sources, and reviews of taped conversations relating to narcotics trafficking. I have assisted in many other investigations, both state and federal. I have drafted drug related search and arrest warrants and have assisted in the execution of numerous search and arrest warrants in which controlled substances, drug paraphernalia, drug related electronic data, and other contraband were found. Through my training and experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

5. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, information received from other law enforcement officers, including their direct examination of relevant documents, and physical surveillance conducted in connection with persons and places mentioned in this affidavit. The purpose of this affidavit is limited to showing that probable cause exists to support the issuance of a criminal complaint and arrest warrant. Accordingly, while this affidavit contains all the

material information, I am aware of that is pertinent to the requested criminal complaint and arrest warrant, it does not include each and every fact known by me or other investigators concerning the investigation.[1]

### III. STATUTORY AUTHORITY

6.  This investigation relates to offenses committed in the District of New Hampshire, to wit: possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).  21 U.S.C. § 841(a)(1) makes it a crime for any person "knowingly or intentionally to … distribute . . . or possess a controlled substance with the intent to distribute." . . . defined in [Title 21]."

### IV. PROBABLE CAUSE

7.  Based on my training and experience, and the facts set forth in this affidavit, I have probable cause to believe that on March 30, 2022, in the District of New Hampshire, Joseph F. Lara (LARA) unlawfully possessed with the intent to distribute controlled substances, specifically, methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

8.  On March 30, 2022, as part of an ongoing investigation, DEA agents were conducting surveillance of a known drug trafficker's (Bow Target) residence in Bow, New Hampshire (Bow Residence). At approximately 2:35 p.m., a surveillance unit observed an older model dark-colored Dodge Dakota pickup truck arrive and park at the Bow Residence. As part of another ongoing investigation, DEA agents previously identified LARA as the operator of the Dodge Dakota.[2]  The vehicle remained at the Bow Residence for approximately 20 minutes.

---

[1] Observations made and conclusions drawn throughout this declaration that are based on my training and experience also include the training and experience of other law enforcement agents and officers with whom I have discussed these issues.

[2] DEA agents confirmed with the New Hampshire Department of Safety that the Dodge Dakota was registered to LARA.

9. After the Dodge Dakota departed the Bow Residence at approximately 3:10 p.m., DEA surveillance units followed the vehicle and determined that it was operated by a male driver who was the sole occupant.

10. DEA surveillance units followed the Dodge Dakota as it made a right-hand turn onto Route 3A without using a signal, in violation of New Hampshire RSA 265:45. A DEA Task Force Officer (TFO) on the surveillance team contacted the New Hampshire State Police's Mobile Enforcement Team (MET) to assist in conducting a motor vehicle stop of the Dodge Dakota.

11. Shortly after, a MET trooper stopped the Dodge Dakota for the traffic infraction and positively identified LARA as the driver. During the stop, the trooper asked LARA for consent to search the Dodge Dakota. LARA initially refused to consent to the search. Next, the trooper ran his certified narcotics K-9 around the exterior of the Dodge Dakota during which the K-9 positively alerted to the presence of narcotics.

12. The DEA TFO, now on scene, informed LARA that he was not required to speak to the TFO and was free to leave. The TFO also explained to LARA that based on the K-9's positive alert to the presence of narcotics, there was probable cause to search the Dodge Dakota.

13. Members of DEA and the NHSP MET conducted a road-side search of the Dodge Dakota and located what the DEA laboratory subsequently determined to be 880.9 grams of crystal methamphetamine, smaller quantities of fentanyl, marijuana, and crack cocaine.[3]

14. Once the search was completed, the TFO and LARA spoke privately behind a nearby strip mall. The TFO advised LARA that he was free to leave, not required to speak with the TFO, and could stop answering questions at any time. LARA agreed to speak with the TFO

---

[3] I know based on my training and experience that 800 grams of methamphetamine is a quantity of controlled substances intended for distribution and not intended for personal use.

4

and a DEA SA, who the TFO had on his cellular telephone's speaker. LARA stated that he obtained the methamphetamine found in the Dodge Dakota from the Bow Target at the Bow Residence prior to the vehicle stop and that for the last two years, LARA picked up two pounds of methamphetamine from the Bow Target every two days. LARA stated that the Bow Target charged him $6,000 per pound of methamphetamine and that when he was at the Bow Residence prior to the vehicle stop, LARA also paid the Bow Target $12,000 for a prior sale of two pounds of methamphetamine.

### V.  CONCLUSION

15. Based on the foregoing information, I believe that there is probable cause for the issuance of a criminal complaint and arrest warrant charging Joseph F. LARA with unlawful possession with intent to distribute controlled substances, specifically, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

/s/ David H. McGuckin
David H. McGuckin, Special Agent
Drug Enforcement Administration

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: May 20, 2024
Time: 11:32 AM

HONORABLE TALESHA L. SAINT-MARC
UNITED STATES MAGISTRATE JUDGE